*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TRAVIS DUANE PARKINS,

Defendant-Appellant.

UNPUBLISHED
January 7, 2020

No. 345687
Macomb Circuit Court
LC No. 2017-002185-FC

Before: CAMERON, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

Defendant, Travis Duane Parkins, pleaded guilty to first-degree criminal sexual conduct ("CSC-I"), MCL 750.520b(1)(c) (sexual penetration under circumstances involving the commission of another felony), and the trial court sentenced him to life imprisonment. Parkins appeals by delayed leave granted.[1] We affirm Parkins' conviction and life sentence, but remand for further proceedings regarding the imposition of court costs.

Parkins' conviction arises from the sexual assault of a 14-year-old female ("the victim") on May 2 and 3, 2018. Parkins met the victim on an Internet website, and the victim's profile listed her age as 14 years old. After meeting on the website, Parkins and the victim started communicating via Skype. Parkins confirmed with the victim that she was 14 years old. Parkins and the victim had conversations about sex, and the victim sent Parkins a picture of her bare breast. On May 2, 2018, Parkins and his roommate, Peter Lindhout, traveled from Ionia County to Macomb County to pick up the victim. After returning to Ionia County, Parkins sexually assaulted the victim by engaging in vaginal intercourse and oral sex with her, touching her

---

[1] *People v Parkins*, unpublished order of the Court of Appeals, entered November 30, 2018 (Docket No. 345687).

breasts and vagina, and biting her. Parkins also encouraged Lindhout to take a "turn" at having vaginal intercourse with the victim.[2]

Parkins was charged in Macomb County with three counts of CSC-I, enticing a minor under 16 years old for an immoral purpose, MCL 750.13, and using a computer to commit a crime, MCL 752.796. The trial court denied Parkins' pre-trial motion to change venue to Ionia County. Thereafter, Parkins pleaded guilty to one count of CSC-I pursuant to a plea agreement whereby the remaining charges were dismissed. The trial court sentenced Parkins to life imprisonment for his CSC-I conviction. This appeal followed.

## I. VENUE

Parkins argues that venue in Macomb County was improper, and therefore, the trial court abused its discretion by denying his motion to change venue to Ionia County. We disagree.

This Court reviews for an abuse of discretion whether the trial court erred by denying a defendant's motion for change of venue. *People v Lee*, 212 Mich App 228, 252; 537 NW2d 233 (1995). "Venue refers to the location, or forum, in which the trial is to be held." *People v McBurrows*, 322 Mich App 404, 410; 913 NW2d 342 (2017). "The general venue rule is that defendants should be tried in the county where the crime was committed." *People v Houthoofd*, 487 Mich 568, 579; 790 NW2d 315 (2010). But MCL 762.8 provides:

> Whenever a felony consists or is the culmination of 2 or more acts done in the perpetration of that felony, the felony may be prosecuted in any county where any of those acts were committed or in any county that the defendant intended the felony or acts done in perpetration of the felony to have an effect.

Thus, where a defendant intends for an offense or for the acts done in perpetration of an offense to have an effect in a certain county, that county may serve as an appropriate venue for prosecution.

In this case, Parkins was charged with enticing a minor under 16 years old for an immoral purpose, MCL 750.13 (Count IV), and using a computer to commit a crime, MCL 752.796 (Count V). MCL 750.13 provides:

> A person who takes or entices away a minor under the age of 16 years from the minor's father, mother, guardian, or other person having the legal charge of the minor, without their consent, for the purpose of prostitution, concubinage, sexual intercourse, or marriage is guilty of a felony punishable by imprisonment for not more than 10 years.

---

[2] Lindhout pleaded guilty of third-degree criminal sexual conduct, MCL 750.520d. The trial court sentenced him to 5 to 30 years' imprisonment.

MCL 752.796(1) provides: "A person shall not use a computer program, computer, computer system, or computer network to commit, attempt to commit, conspire to commit, or solicit another person to commit a crime."

Parkins met the victim on a website that had "a lot of underage girls" on it and communicated with her for a period of time over Skype. During these communications, Parkins was in Ionia County and the victim was in Macomb County. Their communications demonstrated Parkins' intent to have sexual intercourse with the victim. Specifically, the victim reported during a forensic interview that she sent Parkins a "boob pic" at his request and that Parkins told the victim that he wanted to "f [her]." Because the victim was in Macomb County when she received the computer communications from Parkins and Parkins later took the victim from her home in Macomb County for the purpose of sexual intercourse, Macomb County was the proper venue with respect to Counts IV and V. With respect to the three counts of CSC-I, "the prosecution is required, except in the most limited circumstances, to join at one trial all the charges against a defendant that grow out of a single transaction." *People v Carey*, 110 Mich App 187, 190; 312 NW2d 205 (1981). Because all of the charges arose out of a single transaction involving Parkins' pursuit of the victim, Macomb County was the proper venue for the three CSC-I counts even though the acts of penetration occurred in Ionia County. Accordingly, the trial court's decision to deny Parkins' motion to change venue did not "fall outside the range of reasonable and principled outcomes." See *McBurrows*, 322 Mich App at 411 (citation omitted).

## II. SENTENCING

Parkins argues that the trial court disproportionately departed from the guidelines minimum sentencing range of 51 to 85 months' imprisonment when it imposed a life sentence, which Parkins argues is unreasonable. Parkins also argues that the trial court erred by engaging in improper judicial fact-finding at sentencing. We disagree.

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). The standard of review is abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). A trial court abuses its discretion when it applies a minimum sentence that violates the principles of proportionality or "by failing to provide adequate reasons for the extent of the departure sentence imposed[.]" *Id.* at 476.

"[A] sentence is reasonable under *Lockridge* if it adheres to the principle of proportionality set forth in [*People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990)]." *People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019), citing *People v Walden*, 319 Mich App 344, 351; 901 NW2d 142 (2017). Factors that a trial court may consider under the proportionality standard include the following:

(1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's

potential for rehabilitation. [*Walden*, 319 Mich App at 352-353 (citations omitted).]

"The trial court appropriately exercises the discretion left to it by the Legislature *not* by applying its own philosophy of sentencing, but by determining where, on the continuum from the least to the most serious situations, an individual case falls and by sentencing the offender in accordance with this determination." *Milbourn*, 435 Mich at 653-654.

In this case, Parkins pleaded guilty to first-degree CSC. The trial court scored the guidelines and determined that Parkins' guidelines minimum sentence range was 51 to 85 months' imprisonment. However, the statute under which Parkins was convicted permitted the trial court to sentence Parkins to "imprisonment for life or any term of years, but not less than 25 years." See MCL 750.520b(2)(b). When sentencing Parkins to life imprisonment, the trial court stated the following:

> Mr. Parkins, you're a predator. You went online, you knew she was under age, you took advantage of this child repeatedly. The Court has no sympathy for you.

> And the maximum period of incarceration the Court can impose for this offense is life or any term of years. Life appears to be the appropriate sentence. You can't take a child out of the home, molest that child and expect nothing to happen.

> He's to be remanded to the custody of the Michigan Department of Corrections for a period of life.

\* \* \*

> The Court recognizes that guidelines are only advisory and in this circumstance the guidelines are totally inappropriate.

Thus, the trial court consulted the sentencing guidelines, but concluded that "the guidelines [were] totally inappropriate" because of Parkins' predatory behavior whereby he knowingly and repeatedly took advantage of an underage girl. The trial court's sentencing rationale primarily focused on the seriousness of the offense, which is not considered by the guidelines. See *Walden*, 319 Mich App at 352-353. Although Parkins claims that the victim participated willingly, it is undisputed that she was only 14 years old at the time the offense was committed. "Proof of consent is no defense, [because] a . . . child under the statutory age is legally incapable of consenting." *People v Gengels*, 218 Mich 632, 641; 188 NW 398 (1922); see MCL 750.520b(1)(b). Moreover, according to Parkins' presentence investigation report ("PSIR"), the victim realized that going with Parkins was a bad idea during the ride from her home, and she stated that she was scared. Nevertheless, Parkins had vaginal intercourse and oral sex with the victim, touched her breasts and vagina, bit her, and encouraged Lindhout to take a "turn" at having vaginal intercourse with the victim. The PSIR indicates that the victim was still having difficulty performing daily activities one year later. The victim was also extremely anxious and fearful, would become fearful when her grandmother left the room, and was engaging in self-mutilation.

Further, the record reflected that Parkins had a low potential for rehabilitation and exhibited a lack of remorse. Despite the fact that Parkins perused a website containing pictures of naked, underage girls, Parkins denied during his presentence interview that he had any mental health issues. Parkins admitted to having sexual intercourse with the victim and apologized to her at sentencing. However, Parkins failed to express any remorse for the victim at his presentence interview. Specifically, at the interview, Parkins denied that he knew that the victim was a minor even though her age was clear from her Internet profile and Parkins had specifically asked the victim before the assaults whether she was really 14 years old. Parkins also admitted to watching pornography on a daily basis and admitted that he was attracted to materials involving a subordinate trading sexual favors with a person in authority. Parkins admitted to using illegal drugs and alcohol but denied the need for treatment. Although Parkins argues that he was only 29 years old at the time of the offense, a sentencing court need not consider a defendant's age. *People v Piotrowski*, 211 Mich App 527, 532-533; 536 NW2d 293 (1995).

In sum, although the trial court did not explicitly refer to the principle of proportionality, we conclude under the circumstances presented that the trial court's decision conformed to the law as articulated in *Milbourn*, and that the sentence was proportional under *Milbourn*. Consequently, the sentence was reasonable under *Lockridge* and Parkins is not entitled to resentencing on the ground that his sentence was unreasonable and disproportionate.

In a related claim, Parkins argues that the trial court engaged in improper judicial fact-finding to justify a sentence that exceeded the guidelines range. Parkins does not point to any specific judicial fact-finding in making his argument. See *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) (holding that failure to brief a question on appeal is tantamount to abandoning it). In any event, judicial fact-finding at sentencing is not impermissible. In *Lockridge*, 498 Mich at 364, our Supreme Court held that Michigan's sentencing guidelines are constitutionally deficient to the extent that they "*require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range. . . ." To remedy this deficiency, the Court held that the guidelines are advisory only. *Id*. at 365. As explained in *People v Biddles*, 316 Mich App 148, 158; 896 NW2d 461 (2016):

> The constitutional evil addressed by the *Lockridge* Court was not judicial fact-finding in and of itself, it was judicial fact-finding in conjunction with *required* application of those found facts for purposes of increasing a *mandatory* minimum sentence range. *Lockridge* remedied this constitutional violation by making the guidelines *advisory*, not by eliminating judicial fact-finding.

In this case, the trial court expressly recognized at sentencing "that [the] guidelines are only advisory." Therefore, Parkins has not established any defect that would warrant resentencing.

## III. COURT COSTS

Parkins argues that the trial court erred by imposing $600 in court costs. The prosecutor concedes that remand is required to establish a factual basis for the costs imposed. We agree.

"[C]ourts may impose costs in criminal cases only where such costs are authorized by statute." *People v Cunningham*, 496 Mich 145, 145; 852 NW2d 118 (2014). Parkins does not challenge the trial court's authority to impose such costs. Indeed, MCL 769.1k authorizes trial courts to impose "any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case[.]" MCL 769.1k(1)(b)(*iii*). Such actual costs include:

> (A) Salaries and benefits for relevant court personnel.

> (B) Goods and services necessary for the operation of the court.

> (C) Necessary expenses for the operation and maintenance of court buildings and facilities. [MCL 769.1k(1)(b)(*iii*)(A)-(C).]

Although a trial court is not required to separately calculate the court costs, it is required to " 'establish a factual basis' from which this Court can 'determine whether the costs imposed were reasonably related to the actual costs incurred by the trial court.' " *People v Stevens*, 318 Mich App 115, 121; 896 NW2d 815 (2016), quoting *People v Konopka (On Remand)*, 309 Mich App 345, 359-360; 869 NW2d 651 (2015).

In this case, the trial court did not provide a factual basis for assessing $600 in court costs. "[W]ithout a factual basis for the costs imposed, we cannot determine whether the costs imposed were reasonably related to the actual costs incurred by the trial court, as required by MCL 769.1k(1)(b)(*iii*)." *Konopka (On Remand)*, 309 Mich App at 359-360. We therefore remand for the trial court to provide a factual basis for the imposition of $600 in court costs under MCL 769.1k(1)(b)(*iii*), or to alter that amount if the trial court decides that it is appropriate to do so.

## IV. ATTORNEY FEES

Parkins lastly argues that the trial court erred by enforcing an order to repay court-appointed attorney fees without first assessing his ability to pay. The record does not support this argument.

MCL 769.1k(b)(*iv*) permits a trial court to order a defendant to repay the "expenses of providing legal assistance to the defendant." In *People v Jackson*, 483 Mich 271, 292; 769 NW2d 630 (2009), the Michigan Supreme Court held that, once a trial court attempts to enforce an imposition of court-appointed attorney fees, "the defendant must be advised of this enforcement action and be given an opportunity to contest the enforcement on the basis of his indigency." If the defendant makes a timely challenge in the trial court, then the trial court is required to evaluate if the defendant "is indigent and unable to pay at that time or whether forced payment would work a manifest hardship on the defendant at that time." *Id*. at 292-293.

Initially, Parkins was represented by appointed counsel, but he later retained counsel. At sentencing, the trial court did not reference the appointed counsel's costs and never entered an order requiring Parkins to repay those costs. The court only ordered codefendant Lindhout to pay $1,450 in attorney fees. Parkins claims on appeal that $1,450 in attorney fees are being removed from his prison account, but he has not provided any factual support for this claim.

-6-

There is no record in the lower court file of any enforcement regarding attorney fees.  In addition, there is no record that Parkins has challenged any enforcement on the basis of his indigence.  Under *Jackson*, Parkins must make a timely challenge in the trial court before the court will consider his ability to pay. *Jackson*, 483 Mich at 292-293.  Because there is no record of any order requiring defendant to pay attorney fees and no evidence of any attempted enforcement of court-imposed attorney fees, we reject this claim of error.

We affirm Parkins' conviction and life sentence, but remand for further proceedings regarding the imposition of court costs.  We do not retain jurisdiction.


/s/ Thomas C. Cameron
/s/ Mark J. Cavanagh